United States vs. Byron Jones. You may proceed, Counselor. Good morning, Your Honors. My name is Jonathan Shapiro, and I represent the appellant in this case of Byron Jones. Mr. Jones pleaded guilty to one count of conspiracy to distribute cocaine base, three counts of distribution of cocaine base, and one count of possession of cocaine base with intent to distribute. The judge imposed a guideline sentence of 135 months. Although the plea agreement pursuant to which the plea was made contained a waiver of appeal clause, that clause and that waiver is unenforceable because of comments made by the prosecutor. Excuse me, Mr. Shapiro, you don't have to waste any of your time on that. The government hasn't even argued the waiver of appeal clause. Then the main issue in this appeal is the intelligence and knowingness of the plea. It's our position that the district judge violated one of the core concerns of Rule 11, that is 11 and B1G, when she failed completely to make any inquiry whatsoever with respect to whether Mr. Jones understood the nature of the charges against him and make a determination that he understood those charges. Typically, in a case like this, the district judge will inform the defendant of the elements of the particular charge. In this case, there's conspiracy, there's distribution, and there's also possession with intent to distribute it. The elements are not simple. The judge typically will inform the defendant of those elements and ask the defendant whether he understands that the government must prove each of those elements beyond a reasonable doubt. In this case, the judge failed completely to make any such inquiry whatsoever. Rule 11 was designed to avoid the kind of inquiry that the government asked the court to indulge in with respect to looking at other aspects of the plea colloquy. The defendant's background to make a determination that, well, maybe he really did, to engage in speculation as to whether he did understand the charges against him, whether the judge adequately in some other respect made that explanation to him. But Rule 11 was designed to eliminate the necessity of that kind of inquiry. And as this court has made clear numerous times, that is one of the core concerns of the rule. The fact, as the government argues, that the government made a recitation of the facts of the case during the plea colloquy, to which Mr. Jones agreed, doesn't compensate for the failure of the judge to make the critical inquiries. In fact, that recitation of the facts completely eliminated any discussion of conspiracy and focused entirely upon whether or not Mr. Jones agreed that there had been three hand-to-hand controlled buys or sales during the course of the alleged conspiracy. The recitation did not deal with the alleged conspiracy and did not in any way discuss any of the elements that the government would have to prove to prove that conspiracy. Nor was the reading by the judge of the bare bones indictment sufficient to satisfy the concerns of Rule 11. That reading, during the reading, the judge didn't define any of the terms in the indictment, didn't define conspiracy, didn't define a distribution, didn't define a possession with intent to distribute, and merely read the indictments and asked Mr. Jones whether he pleaded guilty to the particular indictment. Well, she did ask whether he understood the charges against him. I don't believe she did. I don't believe she actually asked him whether he understood the charges. I think she merely read the indictment and asked if he pleaded guilty to those charges. Counsel, may I ask you, this is at the risk of embarrassing myself because I may have been way off on my preparation. There's probably an explanation for this, but I know that Judge Sarris handled the sentencing. I have in my bench book a change of plea hearing before Judge O'Toole dated June 19, 2013. There have been these references to a change of plea before Judge Sarris. Am I just looking at the wrong proceeding? This is United States v. Byron Jones. There's a recitation of what seemed to be the charges we're talking about here, and yet it's Judge O'Toole who's taking the plea. Am I missing something? It was Judge Sarris. I don't know where that comes from. It was Judge Sarris. Okay, well, then I wasted a lot of time looking at the wrong transcript. I don't know how that happened, but I will find out. Thank you. Counsel, you have only a few minutes left, and I hope you'll use at least part of your time to talk about the two-level enhancement for maintenance of the premises. Yeah. That, of course, was objected to during the sentencing hearing. Right. The two-level increase is permitted under 2D1.1B12 on the ground that the defendant maintained a premises for the purpose of manufacturing and distribution of controlled substance, the so-called stash house enhancement. To my knowledge, this Court has not interpreted these particular guidelines. I think that's correct. The application notes make clear that there are a number of elements, factors, to be considered by the judge. One is the possessory interest of the defendant. Secondly, whether or not the defendant controlled the particular premise. And thirdly, whether the primary use of the premises was for the manufacture and distribution of drugs. And within that same sense, the frequency with which the manufacturing or distribution was used on a particular premise. Well, let's take it the other way around. In terms of primary use, as I understand the record, there is no evidence that the premises were used for anything else other than the distribution of drugs and the defendant's overnight accommodation. The defendant kept close there and sometimes slept there. But as I understand the record, no other person was living there. At least there's no evidence that any other person was living there. During the hearing on the motion to suppress, there was a fair amount of evidence which described the fact that there was a tenant, that that tenant paid the rent, paid the utilities. Paid the rent. Sometimes the defendant delivered the rent check for her. Sometimes that was the case. All right. But what about physical presence in the apartment? Well, there was a considerable amount of evidence that the defendant lived there quite frequently, along with his girlfriend, who also lived there. And there was evidence that there was food on the premises. There was clothes on the premises. And Mr. Jones did, in fact, testify as to the fact that he frequently stayed there. Right. So I think that there is evidence that it was his residence and that this really is no different than the mine run of drug cases where transactions are often conducted from the person's residence, even though in this case Mr. Jones also had another residence where he lived with his girlfriend. Had another residence. And that's the residence he used on all his official papers, his driver's license, everything like that. He didn't have a driver's license, but he did use it on supposedly on a mass identification card. Right. Okay. All right. Thank you. Thank you, Your Honor. Good morning, Your Honors. And may it please the Court. Kelly Lawrence for the United States. Judge Lopez, to answer your question about the transcript. I should have been in the brief. I checked with the trial counsel. It appears to just be a mistake in the transcription of the court report. The docket reflects that the change of plea hearing took place before Judge Saras at Socket Entry Number 135. Okay. The trial counsel confirmed that it was indeed in front of Judge Saras. Okay. All right. So the only error is the identification of the judge. I think so. I did not call the court reporter to confirm, but I checked with trial counsel in the docket. All right. That's very helpful. Thank you. I'll address first the defendant's argument concerning the stash house enhancement, and I would note any error, and we don't believe, the government does not believe there is any error in applying that enhancement, would be considered harmless in this case, because Judge Saras made very clear at the sentencing hearing that the 135-month sentence imposed was the sentence she would impose under her analysis of the statutory sentencing factors. See, I'm greatly troubled by that argument, Ms. Lawrence. The Supreme Court has told us that the guidelines, even though they're advisory, are the starting point for a sentence. They have some weight. And your argument, in effect, is saying that a district court can say, I don't have to bother with making the guideline calculations that I'm supposed to make because I've made my mind up looking at 18 U.S.C. 3553 that I'm going to sentence this defendant to 135 months. I think that would bring chaos to this guideline regime if a judge has that power. That's a broader interpretation of the point I was making in the brief and I make now, which is a little more narrow in that it's not to suggest that the court is wrong. It's just to say that in the situation where the court examines the procedural claims that are raised, if there's an error to be found, the court also would then proceed to the harmless error analysis just as it does in many other circumstances. And that's only to say that where you have a clear indication and an explanation by the court, as was here, of various important 3553A factors that led to this court sentencing decision. And here, for example, the district court discussed at length its decision to impose a lower sentence than the government was recommending in large part, although there was a large amount of drugs, there was no guns involved in this particular crime of conviction as opposed to his prior crime of conviction. And she detailed all of those reasons. But the two contested sentencing factors would have made a significant difference in the guideline range. Without those factors, the guideline range would have been lower, the top of it, by 30, 40%. And to say, I'd impose the same sentence anyway, is very bothersome to me. And I don't want to harp on it, but I don't think the government should take much solace in it. That's a fair point, Your Honor. And in this case, we don't believe there was any clear error in the district court's decision to impose the two-level enhancement for the stash house. As was just discussed, the district court had an evidentiary hearing at the suppression stage and heard from the defendant as well as the case agent who executed the search. And there was ample evidence revealed at the hearing to suggest that the defendant spent the night in the apartment, kept his clothes there, had free access to the apartment, he had a key, he could come and dial ICPs. So what do we do with the primary use language? As I intuit from Mr. Shapiro's argument, he's saying that the defendant's primary use of these promises, he doesn't deny the defendant used these promises, but the defendant's primary use of these promises was to live there and it was only incidental that he did his drug dealing there. The record would defeat that claim, I would submit. There's evidence that he did use the girlfriend's residence. This was the court's finding as well in her suppression ruling that the primary residence was the girlfriend's apartment and his locus of his drug distribution activity was the Melville Street apartment. And all of the evidence in the record is consistent with and supports that finding. And the guideline itself to the defendant's point that it has to be the primary use. That's not the language of the guideline and it's not how other circuits have interpreted that language. It has to be a primary use. And so, for example, other circuits have held that a defendant's own home, truly his own home, his own residence titled and paid for, can still be subject to the Stash House enhancement if there's enough evidence that drug distribution was a primary use. Wasn't there a chest found on the premises that contained a quantity of drugs? As a factual matter, isn't that the case? Yes. The red cooler contained almost 600 or slightly over 600 grams, I think, of crack cocaine. And there were also nearly 500 grams of powder cocaine found in a closet near the cooler. And that almost sounds like the essence of a Stash House. There's a stash of drugs found on the premises. That's correct. And also, according to the testimony of the agent at the suppression hearing and his description of the surveillance of the activity, the defendant's co-defendant had, they watched her come and go from the apartment several times a day for very brief visits. And that's in addition to the more elaborated upon testimony about the specific transactions that occurred with the CW and the defendant, the co-defendant in this case. There's a very strong pattern of activity that suggests it was used as a Stash House. And there's no evidence to suggest that anyone else lived, actually lived in that apartment, including the tenant, and only the defendant's belongings appeared to be there, not the co-defendant's or anyone else. And all of those facts together support the two-level enhancement that the District Court imposed. On a related issue, do you understand Mr. Jones' argument with respect to the invalidity of his waiver of counsel to be roughly like this? We were anticipating the suppression hearing. My lawyer said that he would not address, as part of his affirmative case for suppression, the degree of my association with the apartment, that he was going to wait and see what the government might offer on that subject. His failure to, his plan to refuse to offer any evidence of my association with the apartment in the first instance was a failure to address the necessary issue of standing in order for me to move to suppress in the first place. My lawyer did not understand, apparently, that he could contest my association, my control, if you will, over the apartment for suppression purposes without being stopped to, I mean, he could admit it, rather, without being stopped to deny it in the case in chief. That was an incompetence of counsel below the reasonable level of practice, and that's why I waived his services at the suppression point. Do you understand that to be his argument? I believe that is the core of his ineffective assistance argument at that stage of the proceedings, yes. Aside from his claim to that effect, does the record support that position? It does not support that position. There's much that the defendant says that doesn't bear out in the record, or there's no way for us to know if that's. But there is no colloquy before Judge Saris that explored this point, is that correct? Not the way the defendant presents it. The colloquy before Judge Saris, the defense counsel, Mr. Clardy, was I think appropriately circumscribed in how much he revealed to the court at that stage. He said we had disagreements about legal issues that the defendant wanted to present that he disagreed with and felt would be adverse. But he didn't go into detail, and the defendant wanted him to and now says there's something more to it. But that's one side of the presentation now. I'm sorry. But at the point at which Judge Saris in effect said for the final time, you're really going to waive counsel here, it's a bad idea, and so on, I take it he did not put, excuse me, he himself, Jones himself did not put anything on the record to the effect that I'm doing this only because this is disagreement on this legal issue on which I believe my counsel is wrong and would be wrong greatly to my detriment. There's nothing to that effect on the record. It's not that clear. I think if you tie together the various pieces of the colloquy over the two hearings, the defendant seemed, I think he mentioned standing at one point. I think Judge Saris addressed it and said you understand that even if it can't be used in a certain way, it could be used in other ways. And so there's oblique references to this issue that's much more crystallized in the defendant's motion now. But I would not suggest that it's so fully developed on that point in this record. And the defendant did not make a clear point at that very last moment that said this is exactly why I'm disagreeing. He also had some other claims related to other issues that he wanted to raise. Okay. But we have, it seems to me in the fibers of your answer to Justice Souter, that we have tangled up to some extent two issues. All right. There is an issue of the defendant's right to get new counsel appointed and the extent to which Judge Saris properly advised him of the risks of going pro se, et cetera, and determined that there was no fundamental incompatibility. That's a right to counsel argument. But as to the ineffective assistance argument, although that might or might not explain why the defendant wanted new counsel, the ineffective assistance itself under our precedence is something that we normally would not consider on direct appeal but would leave for a 2255, at which time we could have a developed evidentiary record created. That's correct. And as you stated, there's an ineffective assistance of counsel claim I think embedded in his other claims related to Judge Saris' alleged failure to warn him of the risks of proceeding pro se. If the court were to parse those, the record seems to be developed enough. The government's position is it is developed as to evaluate the courts colloquially with the defendant. It's finding that there was no irretrievable breakdown and it's decision to accept the defendant's waiver of counsel and let him proceed pro se for the suppression and pretrial proceedings. That record seems to be sufficiently developed under the court's case law. The ineffective assistance claim relating to the suppression issues raised or not raised and his allegedly coerced guilty plea, that's an area where typically the court would and the government recognizes, you know, dismiss that without prejudice for leave to file a 2255. Thank you. May I ask a question? Yes, sure. Thank you. I'd just like to pursue one question about this question of the knowing and voluntariness of the plea because there does seem to be some merit to that argument in the sense that the change of plea hearing is striking in the sense that there really is no attempt to explain the elements of the offense to the defendant. The charges are simply recited, but there's no attempt to explain that further. And the defendant says that really mattered because if he had understood the elements of the offense, particularly the conspiracy charge, he might have understood that he was, in effect, pleading to a conspiracy charge that exposed him to a larger sort of weight quantity determination and also exposed him to another enhancement about having committed an offense while he was on supervised release. How do you justify, in terms of assuring the knowledge necessary for a plea like this, the absence of any such explanation? And I get the sense that there are references to the fact that he's intelligent, he's been through the system a lot. I mean, are you relying on those kind of factors to compensate for some of the clear deficiencies in the way in which the change of plea was handled with respect to the explanation of the offense? The government's position is there were no deficiencies under Rule 11, and Rule 11 requires that the court inform the defendant and ensure that he understands the nature of the charges. And this court has said one size does not fit all, to be sure. But the court has also said that in many cases, including numerous drug conspiracy cases like this one with very few defendants and very straightforward fact patterns, that a reading of the indictment can be sufficient to inform the defendant of the nature of the charges. And in that analysis, different decisions of this court have addressed the other factors, such as the defendant's intelligence or prior experience with the court system, whether the district court had asked the defendant whether he had read the indictment and discussed it with counsel, which this court did, whether the fact pattern was fairly straightforward, which this was, whether the defendant acknowledged those facts, which he did. So the government's not starting from the point that he's a smart guy who's been convicted before. We're starting with the basic premise that a drug conspiracy charge involving two defendants and some hand-to-hand transactions is simple enough that a reading of the indictment under this court's case law can satisfy Rule 11. And the defendants point that he needed to know more about how his crime would be, the specific elements of his offense would affect his guideline sentence. That's not required by Rule 11. The court explained how the procedure would occur and, moreover, asked the parties to preview the disputed issues, which included drug weight and the criminal history category. So those things weren't necessarily required by Rule 11, but they were present in this case. Thank you. Thank you.